STANDARD ELECTRIC WORKS v. MANHATTAN ELECTRICAL SUPPLY CO.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

No. 98.

PATENTS (§ 328*)—INVENTION—MASSAGING IMPLEMENT.

The Wantz patent, No. 703,100, for a massaging implement, *held* void for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Standard Electric Works against the Manhattan Electrical Supply Company. Decree for defendant, and complainant appeals. Affirmed.

The following is the opinion of the District Court by Hand, District Judge:

I do not see why in the present case the defendant has not supplied the very link which alone was absent in the case against the Eureka Vibrator Company. At that time there was nothing in the art to show that any one had ever thought of putting the motor into the handle of a massage instrument. Small as such a step was, it apparently displaced the old tool and was a real answer to a need in the art. In the case now at bar the facts are different. Garnault's machine shows clearly enough that some one had put a motor into the handle of a massage instrument. It is true that this was of the "shaker-type," so called, and did not operate by means of a tool movable in relation to the piece. This was the type which afterwards Andreæ, 667,357, made for a shaft machine, thus showing Wantz, when his time came, the same type of massage tool driven by shaft and driven by motor in the handle. Certainly this was the basis for close suggestion if Wantz had looked at Pfanschmidt. Wantz followed Pfanschmidt almost exactly and Pfanschmidt's original predecessor was Liedbeck. It is perhaps significant that Garnault refers to Liedbeck's own machine in a footnote to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his publication. He suggests that Liedbeck's end pieces could be used upon his own and that his will be a better instrument. For, he says, "Liedbeck's vibrator must be started by another person and the vibrations which it supplies are jars."

The complainant's answer to this is that, as Garnault appeared in 1894, it must have taken some invention to make the necessary adaptation if eight years elapsed before Wantz appeared, especially as Wantz at once occupied the field after his device appeared. To this the defendant answers that the difficulty was not one of adaptation, which was simple enough, but because the need did not exist till about 1900. At that time, the defendant has proved, without contradiction, it first became common for private houses to have the electric current which made such machines useful for home use. That is the use for which they are especially convenient, and until it became possible so to use them there was no need for their discovery. As to their use with batteries, dry batteries were not available till after 1900, for their life was too short when out of use, while it is obvious that wet batteries with all the care they require would make unpopular a machine which depended upon them for its use. So the defendant insists with justice that the need for a portable machine did not arise till about the time Wantz put together Garnault and Pfanschmidt, so to speak.

Moreover, the defendant further urges that when it appeared the invention by no means drove out the prior machines in the art, for the shaft-driven machines have still their place in the market, when there is a business need for a massage instrument. That is to say, for doctors' offices, barber shops and masseurs' rooms the larger and more bulky machines still hold ground. It is true that this probably is now a very small proportion of the field; in number it may not be more than 20 per cent. of the total machines in use, but that 20 per cent. shows, especially as the old type is much more expensive, that the Wantz machine is not a better implement for all purposes. There is no reason to suppose that, when a permanent and not transportable machine is wanted, Wantz displaced the old type, and there is reason to suppose that the need for a transportable machine arose only when the use of electricity became general enough to make it desirable to have a machine which could be carried about and attached to any socket.

Such consideration as these take most of its force away from the evidence of use and acceptance. It is good evidence of novelty only when the need has existed unfilled for some time before the inventor filled it; that, of course, gives strength to the conclusion that to make it took more than mere artisan's skill; it was an argument upon which I altogether relied in the former case.

There is still another consideration of some weight. Wantz's actual disclosure never gained any success whatever; indeed, it was scarcely sold at all. Only when a new machine appeared in which the motor was not embraced within the hand did the public begin to buy in any quantity. Whether they would in the end have bought Wantz' machine, as they did its successor, no one can say, except in so far as it is to be inferred that they would not, from the difficulty of selling any of the old type.

Now, when the complainant relies for novelty upon success, he is embarrassed when the only success has been gained by a subsequent adaptation of his ideas. It is impossible to know to what extent the subsequent adaptation contributed to the public's acceptance of the later machine, and yet his argument depends upon the assertion that it arose wholly from the factor which he contributed. If one were free to speculate one would conclude that it was in this case rather the subsequent factor, with which he had nothing to do, but it is not necessary to do more than show that the success cannot properly be attributed merely to Wantz's idea.

A court ought undoubtedly to be very chary of substituting its own idea of what seems easy after it is done. In the Eureka Case I gave this invention the fullest benefit of that doctrine, but there must be some limit unless the patent is to be final. All those elements upon which the complainant there succeeded have now disappeared, Mr. Messimer can only urge upon me that the art should have anticipated the advent of general commercial lighting by electricity and that as it did not it must have taken some one

out of the ordinary to put Garnault upon Pfanschmidt. I cannot feel that this is very forceful; the art does not make its inventions till the need either exists or is obviously imminent. What reason is there to say that prior to 1900 any one could see that there would be an immediate field for a transportable electric massage instrument? If it was easy with the materials at hand to get up one, why should any one busy himself about it, until the market could at once absorb it? Men do not invent such things because in two or three years they will be useful, but because they can be sold at once. As soon as that demand arose this appeared, and soon after the more serviceable machine mounted on a handle. I think it would be too much to see in this more than that normal progress of the art reaching out into new fields as the opportunity opens, which no mere first comer should be permitted to monopolize.

Under the opinion in the Eureka Case, and as a new matter, I see nothing for it but to dismiss this bill.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, dismissing bill of complaint in a patent infringement suit.

Hillary C. Messimer and Albert M. Austin, both of New York City, for appellant.

Howson & Howson and Charles Neave, both of New York City, for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. The patent sued upon is No. 703,100, granted June 24, 1902, to Julius B. Wantz for a massaging implement. A prior suit for infringement was brought by the same complainant against Eureka Vibrator Company, in which Judge Hand sustained the patent and held defendant's device to be an infringement.

The present suit was tried before the same judge, but the record was materially changed by the introduction of much testimony which was not in the earlier suit. In consequence he changed his opinion as to the validity of the patent, on the ground that in the later case the defendant had "supplied the very link which alone was absent in the case against the Eureka Vibrator Company." He held the patent void and dismissed the bill. We entirely concur with the reasoning which led him to that conclusion and do not think it necessary to add anything to his opinion.

The decree is affirmed, with costs.